IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

<table>
<tr><td>THE ORIGINAL TALK RADIO<br>NETWORK, INC., an Oregon<br>corporation, TALK RADIO<br>NETWORK ENTERPRISES, LLC,<br>an Oregon limited liability<br>Company, TALK RADIO NETWORK<br>ENTERTAINMENT, INC., an<br>Oregon corporation, TALK<br>RADIO NETWORK-FM, INC., a<br>Delaware corporation,<br>AMERICA'S RADIO NEWS<br>NETWORK, a Nevada Corporation,<br><br>     Plaintiffs,<br><br>  v.<br><br>JOSEPH M. ALIOTO,<br>individually and doing<br>business as the ALIOTO LAW<br>FIRM,<br><br>     Defendant.</td><td>No. 1:13-cv-00759-PA<br>**ORDER**</td></tr>
</table>

**PANNER, J.**

Plaintiffs filed this case in the Josephine County Circuit Court alleging fraud, rescission, money had and received, declaratory relief, legal malpractice, and conversion. Defendant timely removed to this court and now files motions to dismiss

1 - ORDER

(#18) for lack of personal jurisdiction, improper venue, and failure to state a claim. Defendant also moves, in the alternative, to transfer the case to the Northern District of California. At oral argument held August 7, 2013, (#38) Plaintiffs conceded that the conversion claim is moot. Defendant's motion to dismiss that claim is GRANTED. For the reasons discussed below Defendant's other motions to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim are DENIED. Defendant's motion in the alternative to transfer is DENIED.

## Background

Plaintiffs in this action are The Original Talk Radio Network, Inc., an Oregon corporation with its principal place of business in Oregon, Talk Radio Network Enterprises, LLC, an Oregon limited liability company with its principal place of business in Oregon; Talk Radio Network Entertainment, Inc., an Oregon corporation with its principal place of business in Oregon; Talk Radio Network-FM, Inc., a Delaware corporation with its principal place of business in Oregon; and America's Radio News Network, Inc., a Nevada corporation with its principal place of business in Nevada and with operating facilities in Oregon.

Defendant is a resident of California and a member of the California Bar. Defendant's practice is primarily in the field of anti-trust litigation in the state courts of California and in federal courts nationwide, including those in the District of Oregon. Defendant does not own or lease property in Oregon, does not advertise in Oregon, and never traveled to Oregon in

2 - ORDER

connection with this action.

Plaintiffs primarily dealt with Defendant through their corporate officers and agents Mark Masters, William Crawford, and Ronald Severaid.  All three of Plaintiffs' agents are Oregon residents, although Ronald Severaid is a member of the California Bar.

Plaintiffs produce syndicated talk and news radio programs and, together with some other companies, form a group called Spoken Word Syndications (SWS). SWS does business with third parties who operate as vendors in a related market (Vendors). According the Plaintiffs, Vendors subjected SWS to anti-trust and unfair competition, which was severely detrimental to Plaintiffs.

On February 8, 2012, Plaintiffs sent Defendant a draft of an anti-trust complaint against Vendors, along with detailed information about the harm they had suffered.  At the same time, Plaintiffs informed Defendant that they were in a difficult financial situation due to the ongoing harm to their business as a result of Vendors' actions, and also because of a separate and unrelated legal dispute with one of their radio personalities (Talent).  During their initial discussion with Defendant, Plaintiffs stressed the importance of finalizing and filing the complaint as soon as possible.

On February 10, Defendant informed Plaintiffs that he believed the claim had merit and promised that he would finalize and file the complaint.  Defendant drafted and sent Plaintiffs a Fee Agreement containing the following relevant terms:

   1) The scope of the representation was for Plaintiffs
   against Vendors.

3 - ORDER

2) Plaintiffs would pay Defendant a non-deductible, non-refundable $500,000 true retainer to be paid in installments. The first installment of $150,000 was due immediately, with $100,000 installments due on March 26, May 7, and June 18. A final $50,000 installment was due on July 30.

3) Defendant would be paid on a contingency basis. He would receive 25% of anything recovered before filing the complaint, 33.33% of anything recovered after filing the complaint, and 40% of anything recovered after the commencement of trial.

4) Plaintiffs would pay $25,000 into a trust fund for Defendant's costs.

5) Ron Severaid would assist Defendant in the case.

6) If Plaintiffs withheld their consent to settle the case for an amount Defendant believed to be reasonable, Defendant would be permitted to withdraw.

Plaintiffs, through their agents, signed the agreement and returned it to Defendant, along with the initial payment of $150,000 and the $25,000 cost fund. Plaintiffs subsequently made the March 26 payment of $100,000.

According to Plaintiffs, Defendant informed them that the complaint should be filed in the United States District Court for the District of Oregon. Plaintiffs did not think this was strange because, although Defendant is only licensed in California, he advertises that he has performed anti-trust litigation in other states. Defendant also discussed his experience with anti-trust litigation in Oregon with Plaintiffs' agents, which further

4 - ORDER

reassured Plaintiffs that there would be no difficulty filing the
complaint in Oregon. Defendant's willingness to file the
complaint in Oregon was a major factor in Plaintiffs' decision to
retain Defendant.

Defendant represented to Plaintiffs that filing in Oregon
was a tactical decision and that they should delay making any
indication of where the filing was to take place. Defendant also
discussed the tactical and strategic implications of filing the
complaint in the Medford Division or the Portland Division. At
Defendant's direction, Plaintiffs contacted a Portland firm and
confirmed their availability and willingness to work with
Defendant in filing the complaint, to associate with Defendant,
and to assist with Defendant's application to appear *pro hac vice*
in Oregon. Defendant told Plaintiffs that he planned to travel
to Oregon shortly before filing the complaint.

Once he had been retained, Defendant began to advocate a
more passive negotiating strategy with Vendors. With the
assistance of Plaintiffs' agents, Defendant prepared a draft
complaint which omitted any mention of jurisdiction or venue.
Defendant sent a courtesy copy of the draft complaint to Vendors
on March 5. The accompanying cover letter informed Vendors that
complaint would be filed on March 15. Defendant thereafter
delayed filing the complaint several times. Plaintiffs
repeatedly demanded that Defendant file the complaint, but
Defendant declined to do so.

Also during this period, Defendant approached the agents of
Plaintiffs and asked if they would like him to "fix" their
ongoing and unrelated dispute with Talent. Plaintiffs declined

5 - ORDER

the offer.   After Defendant became adverse to Plaintiffs, he
repeatedly asked Plaintiffs to waive the conflict of interest so
that he could represent Talent in an action against Plaintiffs.
Plaintiffs refused to waive the conflict.

     In May, Plaintiffs claimed that Defendant was in breach of
contract for his failure to file the complaint.   Plaintiffs
withheld payment of the May 7 and June 18 installments of the
retainer and advised Defendant that they would immediately wire
transfer the funds if Defendant filed the complaint against
Vendors.   Defendant again declined to file the complaint.

     On June 8, 2012, Defendant sent Plaintiffs a letter
indicating that Defendant had elected to voluntarily withdraw
from his representation of them citing "a difference of opinion
as to the strategy and tactics" and Plaintiffs' failure to honor
the contract by withholding the May 7 retainer installment.
Plaintiffs did not accept the withdrawal and advised Defendant
that the withdrawal would be prejudicial to them.   Despite
Plaintiffs' protests, Defendant withdrew.

     Plaintiffs, in an effort to halt the ongoing harm caused to
their business by Vendors, filed their complaint against Vendors
in California.   Ron Severaid, one of the officers and agents of
Plaintiffs who had dealt with Defendant, is licensed to practice
law in California and he served as Plaintiffs' counsel in filing
the case.   Plaintiffs claim that they filed in California because
they did not have any counsel in Oregon sufficiently versed in
anti-trust law to file the complaint against Vendors in Oregon.
The action against Vendors was subsequently transferred to the
Southern District of New York.

6 - ORDER

Defendant refused to return either the $250,000 he had
received under the Fee Agreement or the balance of the $25,000
cost fund.  After Plaintiffs filed this action, Defendant
returned the balance of the cost fund, along with an accounting
of expenses.

## Discussion

Defendant moves to dismiss this case under Fed. R. Civ. P.
12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P.
12(b)(3) for improper venue.  In the alternative, Defendant moves
to transfer venue to the Northern District of California pursuant
to 28 U.S.C. §1404.  Defendant also moves to dismiss Plaintiffs
individual claims under Fed. R. Civ. P. 12(b)(6) for failure to
state a claim.  In particular, Defendant contends that
Plaintiffs' fraud claim has failed to meet the heightened
pleading standards of Fed. R. Civ. P. 9(b).  I will address each
of these issues in turn.

## I. Person Jurisdiction

Defendant argues that he is a citizen and resident of
California and does not have the requisite minimum contacts with
Oregon to permit the exercise of personal jurisdiction.  He
stresses that his only contact with Oregon is the Fee Agreement
which he prepared and signed in California.

The plaintiff bears the burden of establishing that the
court has personal jurisdiction over the defendant.  Harris
Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd., 328 F.3d
1122, 1128-29 (9th Cir. 2003).  If no evidentiary hearing is
held, the plaintiff may establish personal jurisdiction by a
prima facie showing of jurisdictional facts.  Schwarzenegger v.

7 - ORDER

Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The
court must accept the uncontroverted allegations in the complaint
as true and must resolve factual conflicts in the parties'
affidavits in favor of the plaintiff.  Id.

To establish personal jurisdiction over a non-resident
defendant, the plaintiff must show that the forum state's
jurisdictional statute confers personal jurisdiction and that the
exercise of jurisdiction comports with federal due process
requirements.  Fed. Deposit Ins. Corp. v. British-American Ins.
Co., Ltd., 828 F.2d 1439, 1441-42 (9th Cir. 1987).  Oregon's
long-arm jurisdictional statute is co-extensive with federal due
process requirements.  Or. R. Civ. P. 4(L).  The jurisdictional
analysis is therefore the same under both Oregon and federal law.
See Yahoo!, Inc. v. La Ligue Contre Le Racisme Et
L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  Due
process requires that a nonresident defendant have certain
minimum contacts with the forum state such that the exercise of
personal jurisdiction does not offend "traditional notions of
fair play and substantial justice."  Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945).

The constitutional due process test may be satisfied by a
finding of either general or specific jurisdiction.  General
jurisdiction may be found where the defendant has "substantial"
or "continuous and systematic" contacts with the forum state.
Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082,
1086 (9th Cir. 2000).  This is a "fairly high" standard and
requires that the defendant's contacts be of the sort that
approximate physical presence.  Id.  In this case, Plaintiffs do

8 - ORDER

not contend that Defendant has systematic and continuous contacts with Oregon.  The question is therefore whether this court has specific jurisdiction over Defendant based upon his forum-related contacts or activities.

In Schwarzenegger, the Ninth Circuit established a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or preform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;  (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs.  Id.  If the plaintiff fails to satisfy either prong, there is no personal jurisdiction in the forum state.  Id.  Once the first two prongs are satisfied, the burden shifts to the to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable.  Id.

### A. Purposeful Availment

In contract cases, courts to apply the "purposeful availment" standard to determine if plaintiffs have met their burden on the first prong.  Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff.  In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of

9 - ORDER

business within the forum state

Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.
1988) (citations omitted).

Focusing upon the defendant's conduct "ensures that a
defendant will not be haled into a jurisdiction solely as a
result of random, fortuitous, or attenuated contacts, or of the
unilateral activity of another party or a third person." Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and
internal quotations omitted). See also Hanson v. Denckla, 357
U.S. 235, 253 (1958) ("The unilateral activity of those who claim
some relationship with a nonresident defendant cannot satisfy the
requirement of contact with the forum State.").

The court has specific jurisdiction when the defendant
"deliberately has engaged in significant activities within a
State," or has "created continuing obligations between himself
and residents of the forum." Burger King, 471 U.S. at 475-76
(citations and internal quotations omitted); see also Sinatra,
854 F.2d at 1195 (9th Cir. 1988)("[T]he solicitation of business
in the forum state that results in business being transacted or
contract negotiations will probably be considered purposeful
availment."); Schwarzenegger, 374 F.3d at 802 (Purposeful
availment "typically consists of evidence of the defendant's
actions in the forum, such as executing or performing a contract
there."). By taking such actions, the defendant's "activities
are shielded by the benefits and protections of the forum's
laws," and it is therefore "presumptively not unreasonable to
require him to submit to the burdens of litigation in that forum
as well." Burger King, 471 U.S. at 475-76 (internal quotations

omitted).

Merely executing a contract with a company that is a
resident of the forum state is not sufficient to confer personal
jurisdiction. Id. at 478; see also Boschetto, 539 F.3d at 1017.
In determining personal jurisdiction in cases of contract, courts
must consider the parties "prior negotiations and contemplated
future consequences, along with the terms of the contract and the
parties' actual course of dealing." Burger King, 471 U.S. at
479.

In this case, although there is a contract between Defendant
and a group of Oregon companies, Plaintiffs must demonstrate some
further facts to justify the exercise of jurisdiction. According
to the complaint and Plaintiffs' affidavits, the action against
Vendors was to be filed in Oregon. The Fee Agreement itself is
silent about where the complaint was to be filed. The draft of
the complaint prepared by Defendant also leaves the venue section
blank, although Plaintiffs maintain that Defendant told them he
was leaving that section blank for strategic reasons.

Plaintiffs have filed Declarations by their agents Mark
Masters, President and CEO of all Plaintiffs, William Crawford,
COO of all Plaintiffs, and Ron Severaid, Executive Vice President
and Secretary of all Plaintiffs. Ron Severaid is also a member
of the California Bar and continues to practice in California,
although he is a resident of Oregon. Severaid Decl. 2.

All three Declarations state that Defendant told Plaintiffs'
agents that the case would be filed in the District of Oregon.
Severaid Decl. 3; Crawford Decl. 2; Masters Decl. 2-3. All three
likewise affirm that Defendant discussed his previous litigation

11 - ORDER

experience in the federal courts of Oregon.  Severaid Decl. 4;
Masters Decl. 3; Crawford Decl. 3.

> Defendant's unambiguous statements that he would file
> the Complaint in Oregon were a material factor in
> hiring Defendant because Oregon was the most
> convenient, natural and preferable jurisdiction for
> Plaintiffs.  Defendant never suggested filing in any
> other jurisdiction than Oregon with me and consistently
> maintained, from my initial conference with him
> forward, that he would file in Oregon.

Masters Decl. 3.

The other two declarations make similar statements. Crawford
Decl. 3; Severaid Decl. 4.

Ron Severaid affirmed in his Declaration that Defendant
directed him to make a number of revisions to the complaint and,
more significantly, he also directed Severaid to make contact
with local counsel in Oregon to assist him in his admission *pro
hac vice*. Severaid Decl. 4-6.  In support of the Declarations,
Plaintiffs have attached a number of emails, including an email
sent by Severaid to Defendant regarding the local counsel and the
requirements of admission *pro hac vice* in Oregon.  Masters Decl.
Ex. 1, at 2; Severaid Decl. Ex. 2, at 2.  No reply from Defendant
is included.

Accepting, as I must, the complaint and Plaintiffs'
affidavits as true, it is clear that the "prior negotiations and
contemplated future consequences" in this case centered around
the action against Vendors being filed in Oregon.  The emails
which Plaintiffs have included support that "the parties' actual
course of dealing" was based on the complaint being filed in
Oregon, especially with regard to the retention of local counsel
to associate with Defendant.  Although these actions were taken

12 - ORDER

by Plaintiffs, the complaint and declarations allege that they
were done at Defendant's direction.  This is consistent with the
terms of the Fee Agreement, which provided that Ron Severaid was
to assist Defendant in the case.  I conclude that by entering
into this contract and taking affirmative steps to prepare to
file in Oregon, Defendant purposely availed himself of the
benefits and protections of Oregon.

### B. Arising Out of Forum Contacts

This dispute arises out of Defendant's refusal to file the
complaint against Vendors and the subsequent breakdown of the
relationship between the parties.  The complaint and affidavits
make it clear the action against Vendors was to be filed in
Oregon.  I conclude that this case arises out of Defendant's
contacts with Oregon.

### C. Reasonableness

Once Plaintiffs have satisfied the first two prongs, the
burden shifts to Defendant to show that the exercise of
jurisdiction is unreasonable.  Seven factors must be considered
in determining whether the exercise of personal jurisdiction is
reasonable under the Due Process Clause:

> (1) the extent of the defendants' purposeful
> interjection into the forum state's affairs; (2) the
> burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the
> defendants' state; (4) the forum state's interest in
> adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the
> importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence
> of an alternative forum.

Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 866-67
(9th Cir. 2003)  The court must balance all seven and no single

13 - ORDER

factor is dispositive.  Id.

The first factor, purposeful interjection, is analogous to purposeful direction under the first prong of the personal jurisdiction analysis.  Sinatra, 854 F.2d at 1199.  In this case, I conclude that Defendant has purposefully interjected himself into Oregon for the same reasons I conclude Defendant purposefully availed himself of the benefits and protections of doing business in Oregon.

As to the second factor, Defendant claims that it would be "difficult, if not impossible" for him to secure third party witnesses in Oregon.  Most of the third party witnesses named by Defendant are involved in the underlying action against Vendors and are residents of New York or California.  It is not clear what relevance these witnesses have to this action.  Nor is it clear how Defendant intends to secure the testimony of unwilling New York witnesses in California if he could not secure those witnesses in Oregon.  Furthermore, according to Defendant's declaration, the parties discussed filing the underlying action against Vendors in a number of jurisdictions, including Oregon. Alioto Decl. 5-6.  As Defendant was, by his own admission, willing to undertake filing the case at issue in Oregon, it is not unreasonable to expect him to defend against a related matter here.  Although it would undoubtedly be easier for him to defend in California, I do not believe that defending in Oregon would be particularly burdensome to Defendant.

The third and fourth factors revolve around the competing interests of Oregon and California in adjudicating this case.  As this is a commercial dispute between private parties, neither

14 - ORDER

state has a particularly strong interest in the outcome. Every argument that could be made in favor of either state could be made with equal force in favor of the other. The third and fourth factors therefore cancel one another out in this case.

As to the fifth factor, Defendant has no assets in Oregon. It would be necessary for Plaintiffs to file an action in California to collect any judgment awarded in Oregon. This weighs in favor of Defendant.

Defendant concedes that the sixth factor, the importance of Oregon to Plaintiffs, weighs in favor of the exercise of jurisdiction.

For the seventh factor, Plaintiffs bear the burden of proving the unavailability of an alternative forum. <u>Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.</u>, 1 F.3d 848, 853 (9th Cir. 1993). Plaintiffs in this case do not dispute that jurisdiction could also be found in California nor do they assert that their claim would be precluded there. This factor weighs in favor of Defendant.

On balancing the above factors, I conclude that Defendant has not met his burden of showing that the exercise of jurisdiction in Oregon would be unreasonable.

As Plaintiffs have made a prima facie showing of jurisdictional facts and Defendant has failed to demonstrate that the exercise of jurisdiction would be unreasonable, I conclude that Defendant is subject to personal jurisdiction in Oregon. Defendants motion to dismiss on that basis is DENIED.

## II. Improper Venue

Defendant argues that all relevant events which underlie the

15 - ORDER

causes of action arose in California and that Oregon is an improper venue for this action.

A civil action may be brought in 1) the district where the defendant resides, 2) a district where a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or, if parts 1 and 2 do not apply, 3) in any district where the defendant is subject to personal jurisdiction. 28 U.S.C. §1391(b). In contract cases, venue is properly in the place of intended performance. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986). The place of performance is the preferred venue in such cases because it is "determined at the inception of the contract and therefore parties can anticipate where they may be sued" and is also "likely to have a close nexus to the underlying events." Id.

In this case, although the Fee Agreement is silent as to the place of performance, the complaint and affidavits make it clear that the action against Vendors was to be filed in Oregon. I conclude that the place of performance was to be Oregon and venue is therefore proper in Oregon. Defendant's motion to dismiss on that basis is DENIED.

## III. Motion to Transfer

Defendant argues that, if the case is not dismissed, it should be transferred to the Northern District of California.

Venue may be transferred "[f]or the convenience of parties and witnesses," and "in the interest of justice." 28 U.S.C. §1404(a). Courts have broad discretion in considering motions to transfer venue. Commodity Futures Trading Comm'n v. Savage, 611

16 - ORDER

F.2d 270, 279 (9th Cir. 1979). The moving party bears the burden of showing "by particular circumstances" that the plaintiff's choice of forum is inappropriate. Id. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker, 805 F.2d at 843. In considering a motion to transfer venue, courts may examine:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

In this case, the convenience of the witnesses is inconclusive. Plaintiffs' witnesses are in Oregon, Defendant's witnesses are in California or New York. Defendant attempts to raise the issue of the witnesses in the underlying action against Vendors, but it is unclear how those witnesses relate to this action. In any event, some of those witnesses are in New York, which is equally inconvenient to Oregon and California.

Turning to the interests of justice analysis, the first factor could cut either way as the relevant agreements were negotiated by telephone and executed by Plaintiffs in Oregon and Defendant in California. The second factor, familiarity with governing law, is likewise inconclusive. Plaintiff's complaint alleges common law claims relating to fraud and breach of contract, as well as legal malpractice. The legal malpractice

claim is brought under both the Oregon and California rules of professional conduct.  Both states are equally familiar with the governing law in this case.  The third factor, the plaintiff's choice of forum, clearly weighs in favor of Plaintiffs.  The fourth and fifth factors both relate to the parties contact with the forum and are not in Defendant's favor either, as he has sufficient contacts with Oregon to establish personal jurisdiction and proper venue.  The sixth factor, cost of litigation, is the same in both California and Oregon.  The seventh factor does not favor either forum as it does not appear that there are any unwilling witnesses and both venues have mechanisms for compulsory process.  The final factor, the ease of access to proof, is not convincing either.  The contracts and communications which are at issue here can be found in Oregon and California.

Although it would certainly be easier for Defendant to litigate this case in California, the inconvenience is not sufficient to overcome Plaintiff's choice of forum.  Defendant's motion to transfer the case is DENIED.

## III. Failure to State a Claim

Plaintiff brings claims for fraud, rescission, money had and received, declaratory relief, legal malpractice, and conversion. Defendant moves to dismiss each of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).

### A. Legal Standard

Where the plaintiff "fail[s] to state a claim upon which relief can be granted," the court must dismiss the action.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the

18 - ORDER

complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. <u>Rosen v. Walters</u>, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. <u>Starr v. Baca</u>, 652 F.3d 1202, 1216, <u>reh'g en banc denied</u>, 659 F.3d 850 (9th Cir. 2011).

## B. Fraud

Defendant moves to dismiss Plaintiffs' claim for fraud on the basis that it fails to allege fraud with the particularity required under Fed. R. Civ. P. 9(b). Specifically, Defendant argues that Plaintiffs have not identified a false representation and that they have not pled either that Defendant knew the representation to be false or that Defendant intended Plaintiffs to rely upon it.

To succeed on a claim for fraud, the plaintiff must prove the following elements:

(1)a representation; (2)its falsity; (3)its materiality; (4)the speaker's knowledge of its falsity or ignorance of its truth; (5)the speaker's intent that it should be acted on by the person and in the matter reasonably contemplated; (6)the hearer's ignorance of its falsity; (7)the hearer's reliance on its truth; (8)the hearer's right to rely thereon; (9)and the hearer's consequent and proximate injury.

19 - ORDER

Merten v. Portland Gen. Elec. Co., 234 Or. App. 407, 416
(2010)(internal quotations omitted).

Fraud is subject to heightened pleading requirements under
Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party
must state with particularity the circumstances constituting
fraud or mistake. Malice, intent, knowledge, and other
conditions of a person's mind may be alleged generally." Fed. R.
Civ. P. 9(b).

"It is well established that fraud cannot be predicated upon
a promise to do something in the future, unless the person making
the promise, at the time he made it, had no intention of
performing." Conzelmann v. Nw. Poultry & Dairy Prod. Co., 190
Or. 332, 351 (1950). "To amount to a fraudulent representation
sufficient to constitute actionable fraud, the intention not to
perform must exist at the time the promise to do something in the
future is made, and such an intent formed later and carried into
effect is insufficient." Id.

"[W]hen the averments of fraud are stated in terms that
necessarily imply that the person making the representations knew
their falsity, the pleading is sufficient in that respect."
McGill v. Huling Buick Co., 259 Or. 413, 418 (1971)(emphasis
omitted).

In this case, the complaint alleges "Defendant represented,
promised, and assured Plaintiffs . . . that he would diligently
finalize and file the complaint in federal court in the State of
Oregon and vigorously prosecute Plaintiff's claims against
[Vendors]." Compl. ¶ 18.

Plaintiffs allege that this representation was false, based
20 - ORDER

on Defendants subsequent refusal to file the complaint. Although the representation alleged to be false is one which promises some act in the future, Plaintiffs do allege "The true facts were that Defendant had no intention of diligently finalizing and filing the complaint or vigorously prosecuting Plaintiffs' claims against [Vendors]." Compl. ¶ 49. In this statement, Plaintiffs allege that Defendant had a pre-existing intention not to perform the contract. From the circumstances, it can be inferred that Defendant necessarily knew of the falsity of his representation to Plaintiffs.

Plaintiffs also allege that Defendant made those representations with the intent that Plaintiffs enter into the fee agreement with Defendant and pay him a considerable retainer. Plaintiffs allege that they did not know the representation was false and that they were entitled to rely on that representation because of Defendant's reputation as an anti-trust litigator. Plaintiffs allege that they did in fact rely on it. Plaintiffs also allege that as a result of that reliance, they were defrauded out of $250,000 when Defendant broke off his relationship with them.

I conclude, therefore, that Plaintiffs have alleged every element of their fraud claim and that they have done so with sufficient particularity to satisfy Fed. R. Civ. P. 9(b). Defendant's motion to dismiss Plaintiffs' fraud claim is DENIED.

**C. Rescission**

Plaintiffs' complaint seeks rescission of the contract based on 1) fraud, 2) failure of consideration by Defendant, 3) knowing misrepresentation by Defendant, and 4) unilateral, material

21 - ORDER

mistake of fact.  Defendant takes the position that the

rescission claim is based entirely on the fraud claim and must be

dismissed with that claim.

"[W]here a contract has been determined to otherwise be

existing, enforceable, and valid, a party may have a right to

rescind the contract."  <u>Pereira v. Thompson</u>, 230 Or. App. 640,

664 (2009).  Rescission is an equitable remedy and may be sought

on a variety of grounds, including fraud, misrepresentation, or

mutual mistake.  <u>Venture Prop., Inc. v. Parker</u>, 223 Or. App. 321,

349 (2008).

As Plaintiffs have pled sufficient facts to support their

claim for fraud, their claim for rescission also must survive.

Defendant's motion to dismiss Plaintiffs' rescission claim is

DENIED.

### D. Money Had and Received

Plaintiffs seek the return of the $250,000 they paid to

Defendant.  Defendant argues that this claim is rooted in the

fraud claim and must be dismissed.

An action for money had and received is governed by equity

principles.  The generally accepted test is "whether the

defendant, in equity and good conscience, is entitled to retain

the money to which the plaintiff asserts claim."  <u>Smith v. Rubel</u>,

140 Or. 422, 426 (1932).  "As a general rule, a payment made

under a mistake of fact which induces the belief that the other

party is entitled to receive the payment when, in fact, the sum

is neither legally nor morally due to him, may be recovered,

provided the payment has not caused such a change in the position

of the payee that it would be unjust to require the refund."

22 - ORDER

Id. at 426-27.

In this case, Plaintiffs have alleged a number of circumstances which might justify recovery under a theory of money had and received. If there was fraud, deception, material mistake of fact, or a failure of consideration then it seems, in equity and good conscience, Plaintiffs are entitled to the return of the retainer. As Plaintiffs have pled sufficient facts to support their claims for rescission and fraud, it would be inappropriate to dismiss this claim. Defendant's motion to dismiss Plaintiffs' claim for money had and received is DENIED.

### E. Declaratory Relief

Plaintiffs seek a declaration that the contract is rescinded and unenforceable and that Plaintiffs do not owe the remaining $250,000 to Defendant. Plaintiffs base this challenge on fraud and rescission, as well as on the theory that the contract was unconscionable.

Courts in Oregon have recognized that unconscionability defies precise definition. The "primary focus" in determining when a contract is unconscionable is "substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power." Carey v. Lincoln Loan Co., 203 Or. App. 399, 422 (2005). "Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue." Id. at 422-23.

Although there is nothing in the pleadings to suggest a

23 - ORDER

"substantial disparity" in bargaining positions between the parties, it is recognized that a contract may be unconscionable when its formation involves deception.  As Plaintiffs have alleged that Defendant deceived them about his intention to file the complaint against Vendors in a timely fashion, I conclude the pleadings are sufficient to permit Plaintiffs' claim for declaratory relief to survive.  Defendant's motion to dismiss Plaintiffs' claim for declaratory relief is DENIED.

### F. Legal Malpractice

Plaintiffs claim that Defendant breached his duty to protect and defend their interests when he 1) failed to file the complaint against Vendors right away, despite his promise to do so; 2) when he withdrew from his representation of them to their prejudice, and 3) when he consulted with and assisted Talent in the unrelated dispute with Plaintiffs.  Defendant argues that Plaintiffs have not stated sufficient facts to establish that they would have achieved a more favorable result but for his conduct.  Defendant also argues that Plaintiffs have not pled sufficient facts demonstrating that he breached a duty owed under the Oregon or California rules of professional conduct.

In order to state a claim for legal malpractice, the plaintiff must plead 1) a duty that runs from defendant to plaintiff, 2) a breach of that duty, 3) a resulting harm to the plaintiff in measurable damages, and 4) causation.  Stevens v. Bispham, 316 Or. 221, 227 (1993).  Plaintiffs must establish "but for" causation.  Watson v. Meltzer, 247 Or. App. 558, 566 (2011).

In this case, Plaintiffs action against Vendors is still ongoing.  It is therefore difficult to assess what harm, if any,

24 - ORDER

Plaintiffs suffered with regard to their interests in that case as a result of Defendant's conduct.   Plaintiffs are also not specific as to what harm they suffered as a result of the assistance Defendant is alleged to have provided to Talent in his action against Plaintiffs.

However, with regard to the issue of Defendant's withdrawal, Plaintiffs more clearly stated their case.  The complaint alleges that Defendant owed Plaintiffs a duty not to abandon his representation of them and he breached that duty by withdrawing when it was neither mandatory or permissive for him to do so under either the Oregon or California rules of professional conduct.   Plaintiffs allege that, as a result of Defendant's withdrawal, they suffered the additional expense of hiring another attorney and the costs of the associated delay.   On that basis, Plaintiffs have alleged sufficient facts to state a claim for relief on the basis of legal malpractice.

I conclude, therefore, that Plaintiffs have sufficiently stated a claim.   Defendants motion to dismiss Plaintiffs' claim for legal malpractice is DENIED.

**G. Conversion**

This claim centered on Defendant's refusal to return the balance of the $25,000 cost fund.  The parties agree that Defendant returned the balance, along with an accounting of expenses shortly after this action was filed.   Plaintiffs concede that this claim is now moot.   Defendant's motion to dismiss this claim is therefore GRANTED.

### Conclusion

Defendant's motion to dismiss (#18) for lack of personal

25 - ORDER

jurisdiction is DENIED.  Defendant's motion to dismiss for improper venue is DENIED.  Defendant's motion to dismiss Plaintiffs' conversion claim is GRANTED.  Defendants motions to dismiss Plaintiffs' other claims are DENIED.

IT IS SO ORDERED.

DATED this ___13___ day of August, 2013.

Owen M. Panner
United States District Judge

26 - ORDER