IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| THE ORIGINAL TALK RADIO NETWORK, INC., an Oregon corporation; TALK RADIO NETWORK ENTERPRISES, LLC, an Oregon limited liability Company; TALK RADIO NETWORK ENTERTAINMENT, INC., an Oregon corporation; TALK RADIO NETWORK-FM, INC., a Delaware corporation; AMERICA'S RADIO NEWS NETWORK, a Nevada Corporation,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>JOSEPH M. ALIOTO, individually and doing business as the ALIOTO LAW FIRM,<br><br>Defendant and Counterclaim Plaintiff,<br><br>v.<br><br>MARK MASTERS, an individual<br><br>Counterclaim Defendant. | No. 1:13-cv-00759-PA<br><br>**ORDER** |

1 - ORDER

**PANNER, J.**

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (#105) and Defendant's Amended Motion for Summary Judgment (#118). Plaintiffs' Motion is GRANTED. Defendant's Motion is GRANTED in part and DENIED in part.

## Background

Plaintiffs and counterclaim defendants in this matter are The Original Talk Radio Network, Inc., Talk Radio Network Enterprises, LLC, Talk Radio Network Entertainment, Inc., Talk Radio Network-FM, Inc., and America's Radio News Network (collectively "Plaintiffs"), all of whom are companies which produce syndicated news and talk radio programs. Defendant and counterclaim plaintiff is Joseph Alioto, an attorney specializing in antitrust litigation. Defendant has also named Mark Masters ("Masters"), CEO of Plaintiffs, as an individual counterclaim defendant.

In 2011, Plaintiffs became concerned about the practices of Dial Global ("Dial"). Plaintiffs believed Dial was violating antitrust laws and that Dial's conduct would shortly drive Plaintiffs out of business. Plaintiffs, through Masters, sought to retain Defendant to represent them in an antitrust action against Dial.

After reviewing their case, Defendant agreed to represent Plaintiffs. Plaintiffs contend Defendant promised to prosecute their case against Dial vigorously and promptly file a complaint. On February 10, 2012, Defendant drew up a Fee Agreement, which he sent to Plaintiffs. The relevant terms of the Fee Agreement

2 - ORDER

were:

    1) The scope of the representation was for Plaintiffs against Dial.

    2) Plaintiffs would pay Defendant a "$500,000 non-deductible non-refundable true retainer" to be paid in installments. The first installment of $150,000 was due immediately, with $100,000 installments due on March 26, 2012, May 7, 2012, and June 18, 2012. A final $50,000 installment was due on July 30, 2012.

    3) Defendant would be paid on a contingency basis. He would receive 25% of anything recovered before filing the complaint, 33.33% of anything recovered after filing the complaint, and 40% of anything recovered after the commencement of trial.

    4) Plaintiffs would pay $25,000 into a separate fund for Defendant's costs.

    5) If Plaintiffs withheld their consent to settle the case for an amount Defendant believed to be reasonable, Defendant would be permitted to withdraw.

Masters signed the agreement and returned it to Defendant, along with the initial payment of $150,000 and the $25,000 cost fund. Plaintiffs subsequently made the March 26 payment of $100,000.

Defendant and Plaintiffs engaged in settlement negotiations with Dial. Dial offered Plaintiffs concessions, the value of which is disputed by the parties. Plaintiffs repeatedly demanded that Defendant file the complaint, which Defendant refused to do. In May 2012, Plaintiffs claimed that Defendant had breached the

3 - ORDER

contract by failing to file the complaint. Plaintiffs withheld payment of the May 7 and June 18 installments of the retainer and advised Defendant that they would immediately transfer the funds if Defendant filed the complaint against Dial. Defendant again declined to file the complaint.

On June 8, 2012, Defendant sent Plaintiffs a letter stating that Defendant had elected to withdraw from his representation, citing differences of opinion on strategy and tactics and Plaintiffs' refusal to pay the May 7 retainer installment. Plaintiffs did not accept the withdrawal and advised Defendant that the withdrawal would be prejudicial to them. Despite Plaintiffs' protests, Defendant withdrew.

Plaintiffs then filed their complaint against Dial in district court in California. Plaintiffs retained different counsel to represent them in that action. The case against Dial was transferred to New York and has since settled.

Plaintiffs demanded the return of the money they had paid to Defendant. Defendant refused, although he did ultimately return the balance of the cost fund account after Plaintiffs filed this action.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether or not a fact is material is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). There

is a genuine dispute if the evidence is such that a reasonable jury would return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material facts should be resolved against the moving party; and (2) all inferences must be drawn in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630-31.

## Discussion

**I. Applicable Law**

As a preliminary matter, the Court must address whether Oregon or California law applies. Both in his Motion for Summary Judgment and in his Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant argues that California law should govern this case.

When sitting in diversity, a federal court must apply the conflict-of-law rules of its forum state to determine which law governs the dispute. See Mortensen v. Bresnan Communs., LLC, 722 F.3d 1151, 1161 (9th Cir. 2013). Under Oregon conflict-of-law rules, the "necessary threshold determination [is] . . . whether there is a material difference between Oregon substantive law and the law of the other forum. Waller v. Auto-Owners Ins. Co., 174 Or. App. 471, 475 (2001). Where no material difference exists, courts will apply the law of Oregon regardless of the relative

5 - ORDER

significance of the relationship between the dispute and the alternative forum.  See <u>Angelini v. Delaney</u>, 156 Or. App. 293, 300 (1998).

It is the burden of the party advocating for the application of a different forum's law to identify material differences between the law of Oregon and the law of the alternative forum and Oregon courts will apply Oregon law in the event no party identifies material distinctions, without regard to whether such distinctions actually exist.  <u>Id.</u>  "[I]t is not [the] obligation [of the courts] to cast around the law of California in quest of possible material differences."  <u>Id.</u>

If a material difference is found to exist, courts must then consider the states' relative connection to and interest in the litigation.  <u>Lilienthal v. Kaufman</u>, 239 Or. 1, 14 (1964).  When the interests of neither jurisdiction are clearly more important than those of the other, "the public policy of Oregon should prevail and the law of Oregon should be applied."  <u>Id.</u> at 16.

In this case, Defendant argues that a material difference might exist between the laws of California and Oregon with regard to the validity of true retainers, although he acknowledges that "both California and Oregon recognize true retainers."

This does not satisfy the threshold requirement of demonstrating a material difference between the laws of Oregon and California.  As to all other claims and counter-claims, Defendant has made no showing that a material conflict exists between the relevant laws of California and Oregon.

Even assuming, *arguendo*, that a material difference exists, I am not persuaded that either state has a stronger connection

6 - ORDER

to, or interest in, this litigation. Both share a similar interest in the enforcement of contracts and both have a public policy interest in the prevention of fraud. Accordingly, I conclude that the public policy of Oregon should prevail and this case shall be governed by the substantive laws of Oregon.

## II. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on Defendant's counterclaim for breach of contract. Defendant's counterclaim seeks to hold both Plaintiffs and Masters liable for $250,000 which Defendant contends is still owing on the contract. Plaintiffs argue that the contract is between Plaintiffs and Defendant and that Masters signed the contract in his capacity as an officer and agent of Plaintiffs.

The dispute comes down to two lines in the Fee Agreement. The first relevant line is the signature line, which reads "Mark Masters, CEO Talk Radio Network" and bears the signature "Mark Masters, CEO." Plaintiffs contend that this clearly demonstrates that Masters signed the contract in his capacity as CEO of Plaintiffs, rather than in his individual capacity.

The Oregon Supreme Court has considered this issue:

> It may often happen in the haste incident to the prompt execution of business, or through inadvertence, being more intent on the substance than the form, that merchants or others engaged in business transactions express themselves in their writings informally, and without precision of language, and hence the liberal policy of allowing the intent of the parties to govern, as discoverable from the whole instrument. But we do not think it is usual for persons engaged in business transactions, when acting for themselves and not in a representative capacity, to attach to their signatures such designations of office and to attest the same with the seal of the corporation bearing an impression of its corporate name. On the contrary, we believe when such things are done, and the instrument is consistent

7 - ORDER

>and operative with such indicia, they are more properly referable to the company than the persons as individuals who signed the instrument.

<u>Guthrie v. Imbrie</u>, 12 Or. 182, 192 (1885).

The record indicates that the Fee Agreement was prepared and signed in some haste. A close reading makes it clear that the agreement was to be between Plaintiffs and Defendant, with Masters acting as an agent of Plaintiffs. Such an arrangement is consistent with the signature line, as well as with the address line, which similarly reads "Mark Masters, CEO Talk Radio Network."

The second relevant line follows a description of the sums to be paid and the dates of payment and reads: "These retainer installments are guaranteed to be paid on the dates indicated by Mr. Masters and TRN." Defendant argues that this unambiguously shows that Masters was to be held personally liable. I conclude, however, that the guarantee line is not as unambiguous as Defendant contends. It could be a guarantee of payment, that payment was to be made on a specific date, or both. Nor does it explicitly state that Masters is personally liable for the amount. Considering the document as a whole, I am satisfied that Masters was signing as an officer of TRN.

In the alternative, Defendant contends that Masters should be held personally liable because Plaintiffs are his alter ego. In order to impose liability on a shareholder under the alter ego theory, the moving party must show that 1) the shareholder actually controlled or shared in the actual control of the corporation; 2) the shareholder engaged in improper conduct in the exercise of control over the corporation; and 3) the

8 - ORDER

shareholder's improper conduct in the exercise of control over the corporation prevented the plaintiff from obtaining an adequate remedy from the corporation. Salem Tent & Awning Co. v. Schmidt, 79 Or. App. 475, 481 (1986).

In this case, Defendant has shown only that Masters controlled Plaintiffs or shared in the control of Plaintiffs. There is no evidence of improper conduct or that Masters's improper conduct has prevented Defendant from obtaining a remedy from Plaintiffs. Accordingly, Defendant cannot establish Masters's personal liability under the alter ego theory.

Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

### III. Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on Plaintiffs' claims as well as his own counterclaims. Plaintiffs have conceded and withdrawn their claim for legal malpractice. I accept that concession and that claim is DISMISSED.

#### A. Fraud Claims

Both parties have asserted claims for fraud. To establish actionable fraud under Oregon law, a plaintiff must plead and prove the following elements: 1) a representation; 2) its falsity; 3) its materiality; 4) the speakers knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury. Webb v. Clark, 274 Or. 387, 391 (1976).

A claim for fraud cannot be predicated upon a promise to do

9 - ORDER

something in the future "unless it is alleged and proven that, at the time of making the promise, there was no present intention of performance or, alternatively, that the promise was made with reckless disregard as to whether the promissor could or could not perform." Jones v. Northside Ford Truck Sales, Inc., 276 Or. 685, 690 (1976)(internal quotation marks omitted). Proof of a defendant's eventual failure to perform is not a sufficient basis for an inference that the defendant never intended to perform. Id. at 691. "Other circumstances of a substantial character must be shown in addition to nonperformance before such inference of wrongful intent may be drawn." Conzelmann v. Northwest Poultry & Dairy Prod. Co., 190 Or. 332, 352 (1950).

### 1. Plaintiffs' Claim for Fraud

In this case, Plaintiffs allege that Defendant fraudulently represented to them that he would "diligently finalize and file the complaint in the federal court in the State of Oregon and vigorously prosecute Plaintiffs' claims against [Dial]." Plaintiffs contend that, once Defendant had induced them to sign the Fee Agreement, his "attitude changed so dramatically" that it was apparent he had never intended to perform as promised. Plaintiffs contend this constitutes "circumstances of a substantial character" to support an inference of wrongful intent.

I cannot agree. The only evidence that Defendant never intended to file the complaint and vigorously prosecute Plaintiffs' claims is his subsequent non-performance. This is not sufficient create a genuine question of fact with regard to Plaintiffs' fraud claim. Accordingly, Defendant's Motion for

10 - ORDER

Summary Judgment on this claim is GRANTED.

### 2. Defendant's Counterclaim for Fraud

Defendant's counterclaim for fraud alleges that Plaintiffs and Masters represented that they would pay him $500,000 to induce him to enter into the Fee Agreement with them. Defendant alleges that neither Plaintiffs or Masters had any intention of actually paying that money.

Although Plaintiffs have not moved for summary judgment on this issue, this Court may sua sponte grant summary judgment to one party if "it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held." <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 311 (9th Cir. 1982).

Defendant's counterclaim for fraud shares the deficiencies of Plaintiffs' fraud claim. Other than the fact of subsequent non-performance, Defendant has produced no evidence that either Plaintiffs or Masters intended not to honor the Fee Agreement at the time they entered into it. Nor has Defendant produced evidence of "circumstances of a substantial character" to support an inference of fraud. I conclude that there is no genuine dispute of material fact as to this issue. Accordingly, I GRANT summary judgment in favor of Plaintiffs.

### B. Other claims and counterclaims

As to all other claims and counterclaims, I conclude that genuine issues of material fact remain. Accordingly, I find that summary judgment is not appropriate on those claims and

11 - ORDER

Defendant's Motion for Summary Judgment is DENIED.

### Conclusion

Plaintiffs' Motion for Partial Summary Judgment (#105) is GRANTED.  Plaintiffs have withdrawn their claim for legal malpractice and that claim is DISMISSED.  Defendant's Amended Motion for Summary Judgment (#118) is GRANTED in part and DENIED in part.  Summary judgment is GRANTED in favor of Defendant on Plaintiffs' claim for fraud and GRANTED in favor of Plaintiffs on Defendant's counterclaim for fraud.  Summary judgment is DENIED as to all other claims and counterclaims.

IT IS SO ORDERED.

DATED this __27__ day of May, 2014.

_____
Owen M. Panner
United States District Judge